**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| JOYCE B. RUSSELL, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-06-214 |
| CONTINENTAL RESTAURANT, INC., *et al.*, | * | |
| | * | |
| Defendants. | * | |

\* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Joyce B. Russell ("Russell" or "Plaintiff") brings this suit against Continental Restaurant, t/a Pegaso Restaurant, ("Pegaso"), Nasrin Nawabi-Nazari ("Nawabi-Nazari"), and Nazir Nazari ("Nazari") (collectively, "Defendants") alleging violations of Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 to 219 (2006), the Maryland Wage and Hour Law, Md. Code Ann., Lab. and Empl. §§ 3-401 to 431 (West 2006), as well as the Maryland Wage Payment and Collection Act, Md. Code Ann., Lab. and Empl. §§ 3-501 to 3-509. Currently pending before the Court is Defendants' Motion to Dismiss the Amended Complaint [10]. The Court has reviewed the entire record, as well as the Pleadings, with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will GRANT Defendants' Motion and dismiss this case for lack of subject matter jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Pegaso is a restaurant located in Montgomery County, Maryland. Defendants Nawabi-Nazari and Nazari own Pegaso and play an active role in the daily operation of the restaurant. According to tax returns submitted to this Court, Pegaso's gross sales receipts did not exceed

$500,000 for 2003, 2004, or 2005.

Plaintiff worked as a waitress for Pegaso from July 2002 to January 15, 2006. Before July 2002, Plaintiff was employed by Pegaso's predecessor. Describing her duties as a waitress at the restaurant, Plaintiff states that she "and other employees handled goods . . . which were moved in or produced for commerce and transported to the restaurant across interstate lines." Am. Compl. ¶ 14. She also states that she served customers who may have traveled interstate.

Plaintiff has alleged that during the course of her employment with Pegaso, she regularly worked in excess of forty hours per week and was not paid overtime for these hours worked. She also asserts that Pegaso did not pay her minimum wage for any of these hours.

Plaintiff commenced this suit against Defendants on January 25, 2006. On March 14, 2006, Plaintiff filed an Amended Complaint. In response to the Amended Complaint, Defendants have filed the instant Motion to Dismiss, alleging that this Court lacks subject matter jurisdiction over this matter. This Motion is ripe and ready for review, and an Opinion will now issue.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction may be founded on either of two bases. As with a motion to dismiss under Rule 12(b)(6), a Rule 12(b)(1) motion to dismiss may challenge subject matter jurisdiction by demonstrating that the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). With this type of 12(b)(1) motion, the "facts in the complaint are assumed to be true, and the plaintiff, in effect, is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *Id.*

In the alternative, a Rule 12(b)(1) motion may assert a lack of subject matter jurisdiction "in

fact" apart from any pleading. *See id.* In such cases, a court may look beyond the allegations in the complaint to determine whether any evidence supports the exercise of jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Sharafeldin v. Maryland Dept. of Public Safety & Correctional Services,* 94 F. Supp. 2d 680, 684-85 (D. Md. 2000) (when a defendant challenges subject matter jurisdiction on a motion to dismiss, the court may consider evidence outside the pleadings without converting the motion to a motion for summary judgment).

Whether the defendant attacks jurisdiction under the former or latter theory, once the issue of subject matter jurisdiction has been raised, the plaintiff bears the burden of proving that subject matter jurisdiction exists in the federal courts. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## **ANALYSIS**

Plaintiff alleges in the Amended Complaint that this Court has jurisdiction over her suit under 28 U.S.C. § 1331. Section 1331 confers district courts with original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Fair Labor Standards Act of 1938 (the "FLSA") is a federal law. Therefore, the question that this Court must resolve is whether, under any circumstances, the FLSA could provide a remedy for the conduct alleged in Plaintiff's Amended Complaint.

I.      The Fair Labor Standards Act of 1938

Count I of the Amended Complaint alleges violations of Sections 206 and 207 of the FLSA. Section 206 requires that employers pay employees "engaged in commerce or in the production of goods for commerce" at least the minimum wage set by statute, which presently is $5.15 per hour.

*See* 29 U.S.C. § 206(a)(1). Section 207 prohibits businesses from employing workers "engaged in commerce or in the production of goods for commerce" for more than forty hours per week unless the employer pays the worker at one and one-half times his or her regular rate for the hours in excess of forty hours. *See* 29 U.S.C. § 207. Defendants argue that neither provision applies to Pegaso because the restaurant is not an "enterprise engaged in commerce" under the FLSA and Plaintiff was not "engaged in commerce or in the production of goods for commerce."

The FLSA covers all employees, regardless of the type of work they perform, if they are employed by "an enterprise engaged in commerce," as defined by Section 3(s) of the statute.[1] In order for an enterprise to be "engaged in commerce," it must have annual gross volume of sales made or business done in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(ii). Defendants have attached both an affidavit and the tax returns for the prior three years to their Motion to Dismiss, and these documents reflect that Pegaso's gross sale volume falls short of $500,000. In light of the evidence presented by Defendants, this Court finds Defendants have established that the restaurant does not meet the FLSA "enterprise" standard.

---

[1] Section 3(s) of the Fair Labor Standards Act provides in relevant part:

> "Enterprise engaged in commerce or in the production of goods for commerce" means an enterprise that–
>
> (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. § 203(s).

Plaintiff claims that it is premature for this Court to make a dispositive finding with respect to the gross volume of sales issue and asks that this Court provide her an opportunity to conduct further discovery. As discovery on this matter would not lead to any genuine issues of fact, this Court cannot accede to Plaintiff's request. *Cf. Strag v. Board of Trustees,* 55 F.3d 943, 954 (4th Cir.1995) (holding that a court may deny a Rule 56(f) motion "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment").

Even if an employer does not meet the "enterprise engaged in commerce" requirements, the FLSA's provision may cover a particular employee if that employee was "engaged in commerce or in the production of goods." *See* 29 U.S.C. §§ 206 and 207. To determine whether an employee performed such work, a court must focus its inquiry on the activities of the employee and not on the business of the employer. *See Mitchell v. Lublin McGaughy and Assocs.,* 358 U.S. 207, 211 (1959).

Although courts have read the FLSA expansively, it is uniformly recognized that in enacting the FLSA, Congress did not exercise its full authority under the Commerce Clause. *See id.* ("Congress, by excluding from the Act's coverage employees whose activities merely 'affect commerce,' indicated its intent not to make the scope of the Act coextensive with its power to regulate commerce); *McLeod v. Threlkeld,* 319 U.S. 491, 497 (1943); *see also Wirtz v. R. E. Lee Electric Co.*, 339 F.2d 686, 689 (4th Cir. 1964). In *McLeod v. Threlkeld*, the Supreme Court found it significant that Congress rejected a proposal to have the FLSA cover employees "engaged in commerce in any industry affecting commerce" in favor of the language, "each of his employees who is engaged in commerce or in the production of goods for commerce." *McLeod*, 319 U.S. at 497 & n.2 (citing *Kirschbaum Co. v. Walling*, 316 U.S. 517 (1942) and *Walling v. Jacksonville*

*Paper Co.*, 317 U.S. 564 (1943)). Based on the legislative history, the Court surmised that "[t]he selection of the smaller group was deliberate and purposeful." *Id.*

The implementing regulations to the FLSA emphasize this point, noting:

> Although [the FLSA's definition of "engaged in commerce"] does not include employees engaged in activities which merely "affect" such interstate or foreign commerce, . . . coverage of the act based on engaging in commerce extends to every employee employed "in the channels of" such commerce or in activities so closely related to such commerce, as a practical matter, that they should be considered a part of it.

29 C.F.R. § 776.9. Therefore the definitive test is not whether the employee's tasks have some remote effect on interstate commerce, but whether the employee participated in the channels of commerce.

Plaintiff does not attempt to argue that she assisted in the production of goods for commerce, but rather asserts that she was "engaged in commerce" when she performed the following duties: (1) communicating across state lines with respect to vendors, customers, and credit card payments and (2) handling goods which were "moved in interstate commerce." Pl's Opp. at 5.

Despite Plaintiff's contentions to the contrary, this Court remains unconvinced that Plaintiff's interaction with customers from another state constitutes engaging in commerce. All parties concede that Pegaso's is essentially a local restaurant. While Plaintiff alleges that certain Pegaso's customers were traveling interstate, she has not come forward with any logical reason for the Court to accept this assertion. Furthermore, even if Plaintiff could prove that various customers in the restaurant were traveling from one state to another, this Court finds that this fact alone would be insufficient to show her engagement in commerce within the meaning of the Act. While serving out-of-state patrons may "affect" commerce, this activity does not reflect that Plaintiff was employed

6

in the "channels of commerce." In fact, this Court cannot find a single case that holds that a waitress at a local restaurant serving an out-of-state resident engages in interstate commerce. To contrary, there is a least one case from the Southern District of New York that holds that the fact that people outside the state may have eaten at the plaintiff's employer was insufficient to prove that the restaurant prepared food for interstate commerce. *See Lamont v. Frank Soup Bowl, Inc.*, 2001 WL 521815, at * 2 (S.D.N.Y. May 16, 2001) ("While it is true that people who live outside of New York may have eaten food prepared at Frank's, that fact alone cannot serve as evidence that Frank's prepares the food for interstate commerce."). For similar reasons, this Court holds that Plaintiff's service of out-of-state patrons does not implicate interstate commerce.

It is also clear that communications with vendors and processing of credit card payments do not bring Plaintiff's claim within the ambit of the FLSA. In an opinion letter, the Department of Labor has taken the position that "[e]mployees . . . are individually covered under the FLSA if, in the performance of their duties, they are engaged in interstate commerce . . . . Such employees include those who regularly handle interstate mail and telephone calls, engage in banking or credit card transactions, or receive or handle goods or materials from or destined for out-of-state sources." Opinion Letter, FLSA, 1999 WL 1002373 (Mar. 5, 1999). The Department of Labor regulations clarify an employee who uses interstate communications incidentally is not covered by the FLSA.

> [S]ince "commerce" as used in the act includes not only "transmission" of communications but "communication" itself, employees whose work involves the continued use of the interstate mails, telegraph, telephone or similar instrumentalities for communication across State lines are covered by the act. This does not mean that any use by an employee of the mails and other channels of communication is sufficient to establish coverage.

29 C.F.R. § 776.10(b).

Based on the current record, it appears that any use of interstate communications was not a regular part of Plaintiff's duties. In addition, this Court must note that the Amended Complaint makes no mention of Plaintiff's alleged "interstate" communications, and Plaintiff has not attached an affidavit or other materials that would support her claim that she regularly spoke to vendors and processed credit card payments. *See Xelo v. Mavros,* 2005 WL 2385724, at *4 (E.D.N.Y. Sept. 28, 2005) (holding that a waiter at a local restaurant was not engaged in commerce even though he made bank deposits for defendants); *cf. Thorne v. All Restoration Servs., Inc.*, 2006 WL 1228863, at *3 (11th Cir. May 9, 2006) (holding that an employee who used his company's credit card failed to adduce enough evidence to avoid the defendant's Rule 50 motion on his FLSA claims); *Kitchings v. Florida United Methodist Children's Home, Inc.,* 393 F. Supp. 2d 1282, 1293 (M.D. Fla. 2005) (holding that the plaintiffs were not covered by the FLSA by virtue of the plaintiffs' purchase of items at local stores using their employer's credit card).

Moreover, Plaintiff's handling of produce that may or may not have out-of-state origins does not demonstrate that Plaintiff was engaged in interstate commerce. Supreme Court precedent has distinguished employees who handle goods for a wholesaler and move these goods interstate from those who handle goods after an employer acquires the goods for local disposition. *See McLeod*, 319 U.S. at 493. While the FLSA provides protections for the former group, it may not for the latter.[2] *Id.*; *accord Thorne* 2006 WL 1228863, at *3 ("When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act"); *Xelo*, 2005 WL 2385724, at *4 (recognizing that

---

[2] As this Court has previously stated, if an employee is not engaged in interstate commerce, the FLSA applies if his or her employer meets the definition of an "enterprise engaged in commerce."

interpreting the FLSA to apply to a handler of any good which has moved interstate "would negate the significance of the clause and ignore the intent of Congress to create a distinction between certain workers whose activities were covered by the FLSA and others whose activities were not."). Even Plaintiff concedes that any goods she handled "ultimately found their way to Pagaso [*sic.*] Restaurant where they were served to, or utilized by, customers." Her handling of these goods did not move the goods *interstate*. Rather, Plaintiff handled these goods after Pegaso's purchased them for local distribution.

In an effort to avoid dismissal of the federal claim, Plaintiff has attempted to compare her duties at Pegaso's with those of the plaintiff in *Wirtz v. Durham Sandwich Company*, 367 F.2d 810 (4th Cir. 1966). An examination of the facts in that case reveals that Plaintiff's situation is easily distinguishable from that of the plaintiff in *Durham Sandwich*. In *Durham Sandwich*, the plaintiff's employer was engaged in "the *manufacture* and sale of sandwiches and in the *wholesale distribution* of cakes, pies, pastries and similar items to lunch counters and drug store," and the plaintiff unloaded shipments of goods that had crossed state lines an average of three to six times per week. *Id.* at 812-13 (emphasis added). After reviewing these facts, the Fourth Circuit held that the plaintiff's "[u]nloading and storing out-of-state shipments of goods, to be distributed later within the state, is sufficient to establish engagement in commerce" under the the FLSA. *Id.* at 813. In contrast, Plaintiff did not unload or store out-of-state shipments of food. Nor is Pegaso's a wholesale distributer of food. Plaintiff only handled foods that had traveled across state lines *after* Pegaso's acquired the goods for the restaurant's own use. Consequently, whether the produce Plaintiff handled was grown or manufactured in another state is simply irrelevant, and Plaintiff's serving of food is insufficient to bring her employment within the purview of the FLSA.

9

Plaintiff also contends that the Act's treatment of domestic workers demonstrates that her work should be protected by the FLSA. That the FLSA makes special provisions for domestic workers actually undermines Plaintiff's claims. In 1974, Congress amended the congressional findings section of the FLSA to read "Congress . . . finds that the employment of persons in domestic service in households affects commerce." 29 U.S.C. § 202(a). Plaintiff contends that by similar logic, the FLSA should apply to all wait-staff. This argument fails for two reasons. First, the Act merely acknowledges that employment of persons in domestic service affects commerce, but does not instruct that its provisions should extend to every domestic employee. Second, it appears meaningful that Congress amended the statute to find that domestic service employees affect interstate commerce, but did not add a similar statement regarding waiters and waitresses. *Cf. TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("[w]here Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). Therefore, without more evidence of a congressional intent to expand the FLSA, this Court will not read exceptions into the Act not found in the text of the statute.

Having found that Plaintiff's former employer is not an "enterprise engaged in commerce" and that her responsibilities at Pegaso's did not involve the channels of commerce, this Court will dismiss her FLSA claim.

II.     Supplemental Jurisdiction

As this Court has dismissed Plaintiff's FLSA claim, only Plaintiff's allegations related to violations of state law remain. Plaintiff urges this Court to exercise its supplement jurisdiction, pursuant to 28 U.S.C. § 1367, over these claims. This Court has discretion as to whether to exercise

supplemental jurisdiction and may properly decline to exercise this authority when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Among the factors that inform this discretionary determination are convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995) (citing *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 n.7 (1988) and *Growth Horizons, Inc. v. Delaware County*, 983 F.2d 1277, 1284 (3d Cir. 1993)).

Plaintiff has represented that she has filed an identical suit in the Circuit Court for Montgomery County on April 21, 2006. Plaintiff has an adequate alternate forum and parties have not yet conducted any discovery in this case. As such, this Court will decline to exercise its supplemental jurisdiction.

## **CONCLUSION**

For all of the aforementioned reasons, the Court will GRANT Defendants' Motion to Dismiss [10]. An Order consistent with this Opinion will follow.


Date:   May 12, 2006                                  /s/
                                              Alexander Williams, Jr.
                                              United States District Court